UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| BROOK BERNINI, MATTHEW BYRNES, SIMON CECIL, ANDREW COHEN, DAVID DREW, JR., ALANA MICHELLE EXUM, BOBBY REESE HAGY, JR., ADRYN HAYES, KEVIN HUNDT, RACHEL JACKSON, TIANA JOHNSON, GARTH KAHL, JARED LANCTOT, MICHAEL LARSON, II, VAIN MAINSTREAM, CRAIG NEEF, MARY OGLE, TIM PHILLIPS, RAPHI RECHITSKY, LAMBERT ROCHFORT, NICK SEGNER, RYAN SOLEM, ZACH SWIFT, ANDREW TEMPERANTE, MICHAEL WARD, II, RACHEL WESTLUND, and NELSON WHITMORE, On behalf of themselves and all others similarly situated, *Plaintiffs*, v. CITY OF ST. PAUL AND JOHN DOE NOS. 1-20, In their individual capacity, *Defendants*. | CIVIL ACTION NO. _____ CLASS ACTION INJUNCTIVE RELIEF SOUGHT JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiffs, on behalf of themselves and all others similarly situated, bring this class action against the City of St. Paul ("City") and John Doe Nos. 1-20 under 42 U.S.C. § 1983 for violating their rights under the First and Fourth Amendments to the United States Constitution. In support of their claims for damages and equitable relief, plaintiffs allege:

1

## BACKGROUND AND POLICY

1. In September 2008, the City hosted the Republican National Convention ("RNC"). In the lead-up to the RNC, the City developed a plan to limit the amount and type of protesting in downtown St. Paul, where the RNC was taking place, to ensure that the RNC would receive a warm reception, free of political protesters. The City developed this plan under the auspices of a National Special Security Event ("NSSE") designation that had been granted by the federal government. Pursuant to the NSSE designation, the City was the lead local agency, with the City's Police Department responsible for the design and implementation of a security plan.

2. The City's Police Department designed a security plan based on a policy of isolation and containment of actual and potential protesters who appeared in the City's downtown area. Under this policy, the Police Department was authorized to arrest actual and potential protesters without probable cause to prevent them from engaging in political expression in the downtown area. The City's policy also authorized law enforcement to use force to intimidate actual and potential protesters into refraining from engaging in political expression in the downtown area. The City had a Mobile Field Force of law enforcement officers ("MFF") to carry out its policy of isolation and containment. In addition, the City's Police Department designated commanders to direct the enforcement actions of the MFF.

3. Pursuant to the City's policy, on the afternoon of September 1, 2008, Police Department commanders directed law enforcement officers to round up persons perceived to be political protesters in downtown St. Paul. Hundreds of law enforcement officers trapped upwards of 200 private citizens on Shepard Road, on the south side of downtown. The persons trapped on Shepard Road were engaged in a broad array of pursuits, all of which were legal. Some were trying to get to or listen to a concert on Harriet Island, others were socializing with

friends, others were protesting the RNC, others were acting as legal observers, others were acting as members of the media, and yet others were present to provide medical attention to injured protesters.

    4. Despite the lawful pursuits of the private citizens trapped on Shepard Road, City commanders directed the deployment of chemical irritants and non-lethal ammunition against them for the purpose of intimidating them and herding them into a park on the south side of Shepard Road near the intersection with Chestnut St. ("Park"). Once police officers had surrounded upwards of 200 persons in the Park, law enforcement officials announced that everyone in the Park was under arrest. No person in the Park was allowed to leave once the Park was surrounded, and the law enforcement officials at no time gave a dispersal order to the persons in the Park.

    5. After placing everyone in the Park under arrest, law enforcement officers went through the Park handcuffing those present who appeared to the officers to be protesters. The persons handcuffed were then transported to jail or holding cells, where they were detained for up to 72 hours.

    6. All of the plaintiffs in this case were subjected to the mass arrest in the Park and many of them were injured by the officers' use of chemical irritants. They now bring this case on behalf of themselves and all others who were arrested en masse in the Park to obtain redress for violations of their First Amendment right to free speech and their Fourth Amendment rights to be free from arrest without probable cause and the use of excessive force.

## PARTIES

    7. Plaintiff Brook Bernini is a resident of Minneapolis, Minnesota. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies

enacted by the City detained and arrested Ms. Bernini without probable cause and on account of her perceived political expression in violation of her rights under the First and Fourth Amendments to the United States Constitution.

8. Plaintiff Matthew Byrnes is a resident of Minneapolis, Minnesota. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained and arrested Mr. Byrnes without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution.

9. Plaintiff Simon Cecil is a resident of Fort Collins, Colorado. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Cecil without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Mr. Cecil without justification in violation of his rights under the Fourth Amendment to the United States Constitution.

10. Plaintiff Andrew Cohen is a resident of Woodland Hills, California. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Cohen without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also

4

used chemical irritants and non-lethal ammunition against Mr. Cohen without justification in violation of his rights under the Fourth Amendment to the United States Constitution.

11. Plaintiff David Drew, Jr. is a resident of Vancouver, Washington. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Drew without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Drew without justification in violation of the Fourth Amendment to the United States Constitution.

12. Plaintiff Alana Michelle Exum is a resident of Galesburg, Illinois and a transgender male. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Exum without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Mr. Exum and hit him with a baton without justification in violation of the Fourth Amendment to the United States Constitution.

13. Plaintiff Bobby Reese Hagy, Jr. is a resident of Minneapolis, Minnesota. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Hagy without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution.

14. Plaintiff Adryn Hayes is a resident of Portland, Oregon and a transgender male. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Hayes without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Mr. Hayes without justification in violation of the Fourth Amendment to the United States Constitution.

15. Plaintiff Kevin Hundt is a resident of LaCrosse, Wisconsin. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained and arrested Mr. Hundt without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution.

16. Plaintiff Rachel Jackson is a resident of Portland, Oregon. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Ms. Jackson without probable cause and on account of her perceived political expression in violation of her rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Ms. Jackson without justification in violation of the Fourth Amendment to the United States Constitution.

17. Plaintiff Tiana Johnson is a resident of Lakeland, Minnesota. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies

enacted by the City detained, arrested, and jailed Ms. Johnson without probable cause and on account of her perceived political expression in violation of her rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Ms. Johnson without justification in violation of the Fourth Amendment to the United States Constitution.

18. Plaintiff Garth Kahl is a resident of Alsea, Oregon. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Kahl without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Mr. Kahl without justification in violation of the Fourth Amendment to the United States Constitution.

19. Plaintiff Vain Mainstream is a resident of St. Paul, Minnesota. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Mainstream without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution.

20. Plaintiff Jared Lanctot is a resident of Providence, Rhode Island. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Lanctot without probable cause

and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution.

21. Plaintiff Michael Larson, II is a resident of Duluth, Minnesota. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Larson without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution.

22. Plaintiff Craig Neef is a resident of Chicago, Illinois. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Neef without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Mr. Neef without justification in violation of his rights under the Fourth Amendment to the United States Constitution.

23. Plaintiff Mary Ogle is a resident of Muncie, Indiana. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained and arrested Ms. Ogle without probable cause and on account of her perceived political expression in violation of her rights under the First and Fourth Amendments to the United States Constitution.

24. Plaintiff Tim Phillips is a resident of San Francisco, California. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained and arrested Mr. Phillips without probable cause and on account of

his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution.

25. Plaintiff Raphi Rechitsky is a resident of Minneapolis, Minnesota. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained and arrested Mr. Rechitsky without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution.

26. Plaintiff Lambert Rochfort is a resident of Seattle, Washington. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Rochfort without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Mr. Rochfort without justification in violation of his rights under the Fourth Amendment to the United States Constitution.

27. Plaintiff Nicholas Segner is a resident of Ashland, Wisconsin. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Segner without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Mr. Segner without justification in violation of his rights under the Fourth Amendment to the United States Constitution.

28. Plaintiff Ryan Solem is a resident of Minneapolis, Minnesota. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Solem without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Mr. Solem without justification in violation of his rights under the Fourth Amendment to the United States Constitution.

29. Plaintiff Zach Swift is a resident of Guilderland, New York. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Swift without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution.

30. Plaintiff Andrew Temperante is a resident of Woodbury, Minnesota. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Temperante without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Mr. Temperante without justification in violation of his rights under the Fourth Amendment to the United States Constitution.

31. Plaintiff Michael Ward, II is a resident of Berrysburg, Pennsylvania. On September 1, 2008, police officers under the direction of the City's Police Department and

pursuant to policies enacted by the City detained, arrested, and jailed Mr. Ward without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution.

32. Plaintiff Rachel Westlund is a resident of Molalla, Oregon and a transgender male. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Westlund without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Mr. Westlund and excessively tightened his handcuffs without justification in violation of his rights under the Fourth Amendment to the United States Constitution.

33. Plaintiff Nelson Whitmore is a resident of White Bear Lake, Minnesota. On September 1, 2008, police officers under the direction of the City's Police Department and pursuant to policies enacted by the City detained, arrested, and jailed Mr. Whitmore without probable cause and on account of his perceived political expression in violation of his rights under the First and Fourth Amendments to the United States Constitution. Police officers under the direction of the City's Police Department and pursuant to policies enacted by the City also used chemical irritants against Mr. Whitmore without justification in violation of his rights under the Fourth Amendment to the United States Constitution.

34. Defendant City is a municipality formed under the laws of the state of Minnesota.

35. The John Doe defendants are the law enforcement officers and public officials who, acting under color of state law, designed, ratified, approved, implemented, and applied the

City's isolation and containment policy and pursuant to that policy authorized and directed the mass arrest without probable cause and based on perceived political expression of the persons on Shepard Road, including plaintiffs and the class members, and the use of excessive force against plaintiffs and the class members.

## JURISDICTION AND VENUE

36. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because plaintiffs assert claims for violations of 42 U.S.C. § 1983.

37. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the events or omissions giving rise to plaintiffs' claims occurred in this judicial district.

## CONDUCT GIVING RISE TO VIOLATIONS OF LAW

38. On the afternoon of September 1, 2008, hundreds of members of the public were present on the sidewalks and park land along Shepard Road in St. Paul. Shepard Road is a scenic route that borders the Mississippi River and on its south side has pedestrian and bike paths and park areas for use by the public. At the time, a concert was taking place on Harriet Island, an island in the Mississippi, and persons were listening to the concert from the Shepard Road park area.

39. Late in the afternoon, a group of 15-25 persons walked eastbound on the pedestrian path along Shepard Road. Some of the persons carried a banner of political protest, others were trying to find a bridge to cross over to Harriet Island for the concert. When the small group approached the Robert Street bridge, they encountered scores of police officers in riot gear and some on horseback blocking their passage. When members of the group inquired about whether they could continue eastbound on Shepard Road, they received no response from the police officers.

40. Without giving any type of order, the police officers blocking Shepard Road began marching westbound in a line towards the group. As they moved westbound, the police officers caused the initial group of 15-25 persons, as well as many other persons walking on the pedestrian path along Shepard Road, to turn around and start walking westbound.

41. As the line of police officers moved westbound, all private citizens on Shepard Road had to move westbound as well. The officers in the line still did not give any type of order, for dispersal or otherwise, and the public was compliant with the movement of the line.

42. Without warning or provocation from the private citizens, the officers began shooting chemical irritant canisters, plastic bullets, and concussion grenades at the private citizens on Shepard Road. When the officers opened fire, there were approximately 50-100 private citizens moving peacefully westbound on the sidewalks next to Shepard Road. The chemical irritant canisters created a cloud of gas around the private citizens that caused them to panic and run westbound for safety. The above-identified plaintiffs were subjected to this use of force.

43. After the canisters were fired, some of the officers approached private citizens individually and sprayed them with hand-held containers of mace or pepper spray. The persons sprayed were not disobeying police orders and were moving westbound along side Shepard Road in response to the movement of the police line. The above-identified plaintiffs were subjected to this use of force.

44. The police officers moved westbound along Shepard Road for the purpose of corralling all members of the public in the Park. To accomplish this, the City also had a line of police officers stationed on the west side of the Park. The line of officers on the west side of the Park was not letting any persons leave the Park.

45. After several minutes, the line of police officers moving westbound arrived at the east edge of the Park. Both lines of police officers then encircled the Park and continued to refuse to let anyone leave the Park.

46. There were more than 200 persons detained in the Park. Some of them were in downtown St. Paul to go to a concert on Harriet Island, others to socialize with friends, others to protest the RNC, others to act as legal observers, others to report for the media, and yet others to act as medics for injured protesters.

47. The 200-plus private citizens waited peacefully in the Park while surrounded by the police officers. When persons tried to leave the Park, the police officers refused to let them leave. The officers gave no dispersal orders.

48. After approximately fifteen minutes, one of the police officers announced by megaphone that all of the persons in the Park were under arrest. The police officer made this announcement in a manner intended to be heard and obeyed by all persons in the Park. The officer lacked probable cause to order the arrest of everyone in the Park.

49. Over the course of the next one to two hours, police officers handcuffed some of the persons while allowing others to leave the park without citation. The police officers decided whom to handcuff and whom to let go based on their opinion concerning whether the person had been protesting the RNC. Alleged protesters were detained, while the others were released.

50. Police officers corralled and subjected to mass arrest all persons in the Park pursuant to the City's isolation and containment policy adopted prior to the commencement of the RNC. All of the plaintiffs were arrested in this mass arrest.

51. The police officers transported to the Ramsey County jail or to make-shift holding pens the private citizens whom they had handcuffed in the park. The persons were detained at the jail for up to 72 hours or at the holding pens for several hours.

## MALICE

52. The conduct of defendants described hereinabove was at all times undertaken maliciously, wantonly, willfully, knowingly, and in intentional or reckless disregard of plaintiffs' legal rights.

## INJURY AND DAMAGE TO PLAINTIFFS

53. By reason of defendants' unlawful conduct described hereinabove, plaintiffs have sustained loss and damage, including, but not limited to, the following:

    a. They have suffered physical pain and injury;

    b. They have suffered emotional distress and humiliation;

    c. They have suffered mental anguish; and

    d. They have lost wages.

The precise amount of plaintiffs' damages is at present undetermined, but their damages are believed to be in excess of $50,000. The precise amount will be proved to and found by the trier of fact in this action.

## CLASS ALLEGATIONS

54. Plaintiffs bring this class action under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2) and (b)(3), on behalf of the following ascertainable class and sub-class:

**Class:** All persons subjected to the mass arrest in the Park on September 1, 2008;

**Sub-class:** All persons subjected to the use of chemical irritants and concussion grenades while being herded toward the Park on September 1, 2008.

55. Plaintiffs' claims for constitutional violations warrant the creation of the Class and Sub-class because they satisfy the threshold requirements of Fed. R. Civ. P. 23(a) and the additional requirements of Fed. R. Civ. P. 23(b)(1),(2), and (3).

56. **Numerosity.** The actual number of class members is unknown at this time, but plaintiffs estimate that the class consists of over 200 persons. It is impracticable to bring all of them before the Court through joinder.

57. **Commonality.** Questions of law and fact are common to the class. Defendants arrested all persons in the Park pursuant to a single uniform command given by megaphone without regard to the actions of any individual. In addition, defendants deployed chemical irritants and concussion grenades in a manner calculated to affect all persons present before them. This case presents the common legal questions of whether probable cause existed to justify the mass arrest at the Park and whether the use of force against the group on Shepard Road was justified.

58. **Typicality.** The claims of the individual plaintiff class representatives are typical of those of the class. Each class representative was arrested pursuant to the mass arrest in the Park, and some of the class representatives were subjected to the deployment of chemical irritant canisters and concussion grenades on Shepard Road. All of the plaintiffs challenge their arrests on the grounds that they were arrested without probable cause in violation of the Fourth Amendment and on account of their perceived political expression in violation of the First Amendment. For those plaintiffs subjected to the use of chemical irritants or concussion grenades, they challenge their use as a violation of the Fourth Amendment prohibition against the use of excessive force by law enforcement officers. The interests of the plaintiffs are therefore aligned with those of the class.

59. **Adequacy of representation.** Plaintiffs will fairly and adequately represent and protect the interests of the class. They are broadly representative of the persons whom defendants arrested and used force against and are committed to achieving appropriate relief for the entire class. Moreover, they have retained counsel with extensive and successful experience representing plaintiffs in civil rights litigation. Plaintiffs, through their counsel, have the financial resources to prosecute this case vigorously on behalf of the entire class.

60. **Danger of Inconsistent Adjudications.** The prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications concerning the subject of this action. Such adjudications could establish incompatible standards of conduct for defendants under the laws alleged herein. Class certification under Fed. R. Civ. P. 23(b)(1)(A) is thus appropriate.

61. **Injunctive relief.** Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because defendants have acted on grounds that apply generally to the class and in a manner that justifies injunctive relief for the class as a whole. Plaintiffs and the class ask the Court to order the City to cease and desist in its unconstitutional policies and practices concerning the repression of political expression and to order the City to institute policies and procedures to ensure that mass arrests and the use of force are no longer used to repress expression protected by the First Amendment.

62. **Predominance of common claims.** Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because the common issues raised by plaintiffs' claims predominate over purely individual issues. A class action is the best means of addressing the issues raised by the claims. Inasmuch as all members of the class allege that they were subjected to the same mass arrest at the Park and the sub-class members allege that they were subjected to excessive force through the deployment of chemical irritant canisters and concussion grenades, requiring each

17

class member to pursue his or her claim individually would entail needless duplication and would waste the resources of both the parties and the Court.  Moreover, few individuals would file lawsuits if the class action did not proceed because they could not afford to pursue individual litigation, and the monetary relief to be achieved is relatively small per capita.

## **VIOLATIONS OF 42 U.S.C. § 1983**

63. Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs of this complaint as if fully set forth herein.

64. Acting under color of law, the John Doe defendants violated plaintiffs' and the class members' Fourth Amendment rights to be free from arrest without probable cause and the use of excessive force when they authorized and directed their detainment and arrest at the Park, their jailing, and the deployment of chemical irritants and concussion grenades against them, all in violation of 42 U.S.C. § 1983.

65. Acting under color of law, the John Doe defendants violated plaintiffs' and the class members' First Amendment right to free speech when they authorized and directed their detainment and arrest at the Park, their jailing, and the deployment of chemical irritants and concussion grenades against them on account of their perceived political expression, all in violation of 42 U.S.C. § 1983.

66. The City, with deliberate indifference to the rights of citizens, designed, initiated, promoted, ratified, and implemented a policy of isolation and containment of actual and potential protesters during the RNC.  This policy authorized and directed police personnel under the City's control, including the John Doe defendants, to arrest actual and potential protesters if they appeared downtown in the City during the RNC and to use force to intimidate protesters and quash political expression.  This policy authorized arrests without probable cause, arrests based

on perceived political expression, and the use of excessive force, all in violation of 42 U.S.C. § 1983, and resulted in the arrests of and use of force against plaintiffs and the class members.

67. As a direct and proximate result of the aforementioned acts and omissions of defendants, plaintiffs and the class members are entitled to recover such actual damages as they show themselves to have sustained and the trier of fact shall find, and such other and further relief as may be available under law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief against defendants as follows:

A. Awarding plaintiffs and the class actual damages as they shall proved to have sustained and the trier of fact shall find;

B. Awarding plaintiffs and the class punitive damages;

C. Awarding plaintiffs and the class interest on any damages for which judgment shall be entered;

D. Awarding plaintiffs and the class their costs and disbursements incurred, including reasonable attorneys' fees;

E. Granting plaintiffs and the class equitable relief permanently enjoining defendants from engaging in such unlawful conduct in the future and requiring defendants to take affirmative steps to ensure that the City's policies are amended to come into compliance with the United States Constitution;

F. That the Court retain jurisdiction until such time as the Court is satisfied that defendants have remedied the practices complained of herein and are determined to be in full compliance with the law; and

G.   Granting to plaintiffs and the class such other and further relief as is just, appropriate, and available under law.

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues properly triable thereby.

Dated:   September 1, 2009                          ROBERT J. KOLSTAD, LAWYER


                        s/Robert J. Kolstad_____
Robert J. Kolstad (#258994)
1005 W. Franklin Avenue, Suite 3
Minneapolis, Minnesota 55405
Telephone:  612-721-3425

R. Travis Snider (#270842)
Snider Law Firm, Ltd.
1005 W. Franklin Avenue, Suite 3
Minneapolis, MN  55405
Telephone: 612-872-1200

David L. Shulman (#260721)
Law Office of David L. Shulman PLLC
1005 W. Franklin Ave., Suite 3
Minneapolis, MN 55405
Telephone: 612-870-7410